**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ANN SAYLER**, individually and as the representative of a class of similarly-situated persons; | **Case No.:** _____ |
| | **Judge** _____ |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY DEMAND ENDORSED HEREON** |
| **MERCEDES-BENZ USA, LLC**, a Delaware corporation, | |
| and | |
| **Does 1-30**. | |
| **Defendants.** | |

Plaintiff Ann Sayler ("Plaintiff or "Doe"), individually and as the representative of a class of similarly-situated persons, alleges upon personal knowledge, information and belief, and the investigation of counsel as follows:

1

## **INTRODUCTION**

1.      In an era of claims of Fake News, it appears Mercedes-Benz USA, LLC (hereafter referred to as "Mercedes-Benz" or the "Defendant") has perfected the art of the "Fake Recall."  While Mercedes-Benz likes to brag of its meticulous and superior German engineering, using the motto "The Best or Nothing," and has a mission statement to "Lead in the Innovation and Delivery of the Brand's Customer Experience through Amazing People and Amazing Service," the reality for its customers is much different.  Mercedes-Benz has exhibited a deceptive pattern with regard to its recalls, including the massive Takata airbag recall.  In fact, Consumer Reports in November 2017 reported that of 19 automakers in the United States, Mercedes-Benz appears to be the **worst** when it comes to fixing Mercedes-Benz vehicles recalled due to its use of deadly airbags having only completed **TWO PERCENT** of such recalls. The next worst automaker completed 23 percent at number 18 with the best record being 79 percent in completed recalls by Tesla. Far from the best, last place Mercedes-Benz has differentiated itself by its pattern of announcing a recall and then doing nothing. These "Fake Recalls," leave Mercedes-Benz customers to fend for themselves in their Mercedes-Benz automobile deathtraps and unsettled in their knowledge that their vehicles are highly dangerous.

2.      Mercedes-Benz issued a recall on or about October 6, 2017, of approximately 495,290 vehicles in the United States for insufficient electrical grounding in steering wheel components that could cause inadvertent deployment of the driver's side airbag leading to injuries and crashes (the "Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall"). To be clear, this action is NOT seeking damages or remedies pursuant to the Takata recall. This action is focused entirely on the recall referenced in this paragraph for the 495,290 vehicles at issue.

3.      What is relevant is that the Mercedes-Benz Electrical Grounding/Airbag Deployment Recall is on the heels of Mercedes-Benz previously notifying consumers, along with massive associated publicity, of the Takata airbag recall. The Takata airbag recall is one of the largest airbag recalls in history and involves Takata airbags in certain Mercedes-Benz vehicles (as well as other types

of vehicles), that could explode during airbag deployment which could result in metal fragments striking the front occupants, possibly causing serious injury or death. As a result of Defendant's insufficient track record in satisfying the Takata airbag recall and the length of the delay in fulfilling the Electrical Grounding/Airbag Deployment Recall, Mercedes-Benz has forced hundreds of thousands of owners and lessees to operate unsafe vehicles.

4.     The Mercedes-Benz Electrical Grounding/Airbag Deployment Recall concerns the premature deployment of airbags, causing grievous injury or death. The premature deployment of an airbag could cause an accident and the sudden explosion of the airbag, may result in grievous injury or death itself. Owners and lessess of the Mercedes-Benz vehicles are thus subject to double danger. Additionally, the Electrical Grounding/Airbag Deployment Recall results in immediate economic harm to all Mercedes-Benz owners of recalled vehicles as it reduces the value of their vehicles and prevents owners from selling their recalled vehicles that have not been repaired by anyone except a Mercedes-Benz dealer.

5.     Plaintiff brings this class action on behalf of persons who have purchased or leased the following Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-Class electric, MY 2012-2018 C-Class, MY 2012-2017 E-Class, MY 2014-2018 CLA, MY 2015-2018 GLA, MY 2013-2018 GLK, which are subject to the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall (hereinafter the "Class").

6.     Mercedes-Benz recall notices, despite warning of potential grave consequences should their cars not be repaired, have not resulted in any remedies by Mercedes-Benz. As of May 22, 2018, Mercedes-Benz is still unable to complete the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall on Plaintiff's vehicle because the limited parts that Mercedes-Benz has to complete the recall are all being used for vehicles being sold at the Mercedes-Benz dealerships.

7.     Despite requests for waiver of lease fees, replacement cars, and other means of compensation during the period that Class Members' vehicles were unable to be repaired and therefore

3

unsafe to operate, Mercedes-Benz has refused to provide Class Members such compensation. This lawsuit seeks this compensation on behalf of Plaintiff and Class Members.

8.     Owners of Mercedes-Benz vehicles subject to the Electrical Grounding/Airbag Deployment Recall continue to be pawns in Mercedes-Benz' continuing game of deception and delay. After each promise of parts coming soon by Mercedes-Benz, Class Members arrive at the dealership to learn that the parts cannot be provided by Mercedes-Benz. Thus, many months after Mercedes-Benz' "recall" letters the gamesmanship continues and Mercedes-Benz cannot provide the parts necessary to repair Class Members' vehicles. Moreover, at present, no certain date has been set for completion of the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall announced in October 2017. Despite the inability to repair these unsafe and defective vehicles with dangerously defective airbags, Mercedes-Benz, as in the Takata recall, refuses to compensate Plaintiff and the Class for replacement cars, amend lease agreements, or provide any remedy for the time without use of the vehicles.

9.     Information from Mercedes-Benz indicates that it is in no hurry to remedy the dangerous defect in Class Members' vehicles. Mercedes-Benz authorized dealerships gave various explanations at different times for the added delay in repair, often contradicted the recall letters provided to consumers, insisting there was no actual danger, could not give a reasonable estimate how long the parts would not be available, and even indicated that the available parts are first being used for cars that are for sale at Mercedes-Benz dealerships.

10.     Mercedes-Benz has been evasive and fails to provide any type of relief to Plaintiff and Class Members even though there are obvious forms of relief that could be provided even if parts are not available, i.e. rental cars. In short, Plaintiff and Class Members are being given the runaround by Mercedes-Benz in order to delay. Even the exact nature of the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall itself remains confusing and ambiguous since letters refer to defects with insufficient electrical grounding. Class Members are left wondering if Mercedes-

Benz even knows what the actual problems are with their expensive luxury vehicles and what the true dangers are or if Mercedes-Benz even intends to ever effectuate its "Fake Recall."

11.      As noted above, requests for waiver of lease payments or replacement vehicles during the period the cars could not be repaired were denied.  Mercedes-Benz Leasing advised Plaintiff that she could not get out of her lease without penalties and other charges and they suggested Plaintiff contact Mercedes-Benz customer care. Mercedes-Benz customer care advised Plaintiff to continue to check with customer care or the local dealership to see if the parts were available. Meanwhile, the Plaintiff and Class Members are driving vehicles with potentially deadly defects. The risks to Plaintiff and the Class are indeed grave and Defendant admits to such in its various recall communications. In the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall, Defendant states that the insufficient grounding could "**lead to an inadvertent deployment of the driver airbag.**" Mercedes-Benz airbags have already been blamed for the deaths of at least 18 passengers worldwide. The fact that an operator of a Mercedes-Benz vehicle could be subject to inadvertent airbag deployment is quite scary and unsettling to operators of the vehicles and operators of vehicles in proximity to those vehicles.

12.      The deplorable actions of Mercedes-Benz make it clear that its "recalls" are hardly that. Instead it is again a sham "recall" designed to inoculate Defendant from liability when in fact, the recall of these dangerous vehicles is a delay designed to allow Defendant to continue to profit from their defective and dangerous cars while distressed and confused consumers are left without remedy.

## JURISDICTION AND VENUE

13.      This Court has original jurisdiction over this action under the *Class Action Fairness Act*, 28, U.S.C. § 1332(d), because this is a class action in which: (1) there are more than one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive

of interest and costs, exceeds $5,000,000.00 in the aggregate.  In fact, damages in the United States alone may exceed 5 Billion dollars.

14.     In addition, this Court has supplemental jurisdiction over Plaintiff's claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and Class Members' claims occurred in the Northern District of Ohio as Defendant: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws within this District; (b) currently does substantial business in this District; and (c) is subject to personal jurisdiction in this District.

## PARTIES

16.     At all times relevant to this action, Plaintiff Ann Sayler was a resident of Stark County, Ohio, and a United States Citizen. Plaintiff Ann Sayler is the lessee of a Mercedes-Benz vehicle subject to the Electrical Grounding/Airbag Deployment Recall. On January 17, 2017, Plaintiff leased a Mercedes-Benz model year 2017, model E400, VIN #WDDKK6FF6HF357330, which is subject to the Mercedes-Benz Electrical Grounding/Airbag Deployment Recall. Although Plaintiff's Mercedes-Benz vehicle has been unsafe to operate for more than half a year, Plaintiff has been forced to continue to pay $910 per month to keep her lease in force. Plaintiff cannot trade in her Mercedes-Benz E400 to any non Mercedes-Benz dealer or sell it to anyone else because other dealers regard her vehicle as unsafe.

17.     At all times relevant to this action, Defendant Mercedes-Benz is and has been Delaware limited liability company, with its headquarters in the States of Georgia and New Jersey, and Customer Assistance Center located in the State of New Jersey. Defendant provides sale and lease options for its vehicles, ranging in total contractual prices from $20,000.00 to many tens of thousands of dollars. Defendant sells and has sold numerous vehicles subject to the Electrical Grounding/Airbag Deployment Recall to Class Members who are residents and citizens of numerous and varied States.

6

18.     At all times relevant to this action, Defendants Does 1-30 were persons and/or corporations whose name cannot be discovered at this time, but whose involvement in the acts complained of herein helped Defendant Mercedes-Benz to commit the acts complained of herein. The residences and/or headquarters of Defendants Does 1-30 is also unknown at this time. However, since the acts complained of herein were, in part, commited within the territorial jurisdiction of this Court, Defendants Does 1-30 have subjected themselves to the jurisidiction of this Court.

## COMMON EXPERIENCES OF CLASS MEMBERS

19.     Mercedes-Benz sells millions of cars in the United States.  Starting in 2014, Mercedes-Benz has sold more than 350,000 cars per year in the United States.

20.     In or around 2010, Mercedes-Benz starting using the motto "The Best or Nothing" when advertising its cars. On the website of Mercedes-Benz, the automaker declares "our promise to deliver 'The Best or Nothing'." Joachim Schmidt, executive vice president-sales and marketing for the brand at its global base in Stuttgart, said the automaker has a long history of bringing new technology innovations to market. "Based on this tradition, our customers expect nothing less than technological leadership," he said. "For us, that means we want to deliver the very best in all areas – be that in research and development, production, sales, service and aftermarket business or in purchasing." The brand claim is reflected in brand's core values of perfection, fascination and responsibility and is also a part of corporate culture, Mr. Schmidt said. Mercedes-Benz also promises its cars will be "Fun to drive; A Pleasure to own."

21.     Mercedes-Benz sells the models subject to their Electrical Grounding/Airbag Deployment sham "recall" in each and every state of the United States. Plaintiff and other Class Members purchased these vehicles believing they would live up to Mercedes-Benz' promises of the best quality vehicles. However, Plaintiff and other Class Members have not found Mercedes-Benz vehicles to be fun to drive, a pleasure to own, and certainly have not lived up to their promise of being the very best in production, safety, service, among other false promises.

7

22.    The dangerous and potentially deadly Mercedes-Benz vehicles owned and leased by the Plaintiff and other Class Members are far from being "The Best or Nothing." Moreover, the Plaintiff and other Class Members are unsure if the dangers described in the Electrical Grounding/Airbag Deployment Recall will ever be addressed. Class Members' concerns that the recall may not be addresses are supported by Mercedes-Benz' established record of not fulfilling its obligations in serious recalls. Plaintiff and the Class are left to drive dangerous vehicles while the Defendant takes care of the recall repairs on the vehicles that it or its dealerships own.

23.    Black's Law dictionary defines a "Recall" as "Removal of a contaminated or defective good by its manufacturer, either voluntarily or when forced by a watchdog agency."  In other common definitions of "recall" the defective goods are to be replaced; merely informing consumers that their goods are defective is not sufficient. Defendant has not met the definition of a recall since it refuses to remove the defective goods it manufactured. Defendant has not timely provided for the removal or repair of the defective vehicles and they have frustrated consumers' ability to have their admittedly defected vehicles removed, fixed or replaced.

24.    Defendant has misled Plaintiff and the Class as to the availability of parts and its ability to remedy its dangerous and unfit vehicles. Defendant has miscommunicated facts regarding the vehicles and the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall, has given false and misleading dates when such vehicles would be repaired, has disseminated false information regarding the recall of its vehicles, and has continued to charge lease payments for lessees and caused Plaintiff and the Class to continue to be damaged by Defendant's abhorrent behavior and actions.

25.    Plaintiff's experience with the Electrical Grounding/Premature Airbag Deployment Recall are typical if not identical to those of other Class Members. Plaintiff purchased her Mercedes-Benz E400 on January 17, 2017. Although Defendant possessed both Plaintiff's address in Arizona (where the Plaintiff was living at the time of the October 2017 Recall) and the Plaintiff's permanent

residence in Ohio, Plaintiff never received notice of the Electrical Grounding/Premature Airbag Deployment Recall. Instead, on April 12, 2018, Plaintiff learned of the recall when she attempted to trade in her Mercedes-Benz E400 at a BMW dealership. After negotiating a deal and while executing the closing documents, the BMW dealership pulled a CarFax report on the Plaintiff's Mercedes-Benz E400. The CarFax report noted that there was an outstanding safety recall on Plaintiff's Mercedes-Benz and the BMW dealership would not take Plaintiff's Mercedes-Benz on trade until such recall had been completed.

26.     On April 12, 2018, immediately after learning of the Electrical Grounding/Premature Airbag Deployment Recall on her Mercedes-Benz E400, Plaintiff proceeded directly to Kempthorn Mercedes-Benz dealership believing she could get the necessary repairs to make her Mercedes-Benz vehicle safe. Kempthorn service department indicated that they could not give Plaintiff any information as to when the problem described in the Electrical Grounding/Premature Airbag Deployment Recall would be solved but told Plaintiff to return after she received her official notice of the Electrical Grounding/Airbag Deployment Recall. Kempthorn advised Plaintiff that even if her vehicle was subject to the Electrical Grounding/Airbag Deployment Recall, they did not have any parts or instructions on how to remedy the problem. However, Plaintiff's spouse was speaking to sales persons at Kempthorn who advised him that the Plaintiff's Mercedes-Benz E400 could be taken in on trade at a Mercedes-Benz dealership and then it would be repaired. The sales employees explained that parts to effectuate the Electrical Grounding/Premature Airbag Deployment Recall were available to remedy vehicles being sold at Mercedes-Benz dealerships, just not the Mercedes-Benz vehicles owned by others.

27.     After going to Kempthorn, Plaintiff looked up her vehicle on a website she heard on a television news report and determined that it was subject to the Electrical Grounding/Premature Airbag Deployment Recall.  Plaintiff decided to call Mercedes-Benz and see if she could get help by going directly to Mercedes-Benz. Plaintiff contacted Mercedes-Benz leasing on May 23, 2018, and advised

that she wished to turn in her vehicle because it was not safe to operate. Mercedes-Benz leasing customer service representatives advised Plaintiff that she could not end her lease early without penalties and other charges. Thus, Mercedes-Benz leasing suggested Plaintiff call Mercedes-Benz customer service.

28.      As Mercedes-Benz leasing suggested, Plaintiff contacted Mercedes-Benz customer service. Mercedes-Benz customer service indicated that the parts to make the necessary repairs were not available at Kempthorn but the parts would be available by the end of May. However, as of June 4, 2018, Plaintiff has not received notice that the parts are available from Mercedes-Benz. Moreover, when the Plaintiff protested that it was improper for the Defendant to make her pay for a vehicle that was defective and too dangerous to drive, Mercedes-Benz customer service department told her that she could drive her car, but if she saw the SRS light come on to pull over immediately and evacuate the vehicle. Plaintiff could not believe that she was being told to do something that would be impossible in many settings, such as on a crowded freeway, in order to remain safe in her vehicle. Plaintiff decided further efforts to get Mercedes-Benz to do the right thing were futile and she sought counsel.

29.      Plaintiff's futile efforts to get Mercedes-Benz to repair its defective vehicle are typical of the experiences of Mercedes-Benz owners and lessees. While other car makers face similar issues in the United States regarding the defective airbags, Consumer Reports noted in November 2017 that Mercedes-Benz is unique in their shockingly low rate of recalls completed. In a review of 19 automakers experiencing airbag inflator recalls, the other 18 companies range from having 23% to 79% of their recalls completed. ***Dead last at 19th is Mercedes-Benz which has completed only 2% of their recalls. Far from the "Best or Nothing."*** Plaintiff rightfully assumes based on Defendant's behavior and conduct when it comes to recalls that the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall is another "sham recall" and will not be satisfied

especially given that more than SIX MONTHS AFTER THE RECALL there are still no efforts to fix

her car's dangerous defects or even a proposed date to do so.

30.     The clear purpose of a "recall" is to remedy defective and dangerous products so they

can be returned to the consumer in the condition intended and promised when bought or leased.  If the

Defendant is unable to effectuate such recall, then as between Plaintiff, the Class and Defendant it

would be inconsistent and contrary to law, good faith and common notions of fair dealing, and morality

for the Plaintiff and Class to bear the harm and damages caused by Defendant's dangerous and

defective products and Defendant's inability to rectify and repair such products.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this class action on behalf of herself and similarly situated Class

members pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because there is a well-

defined community of interest in the litigation and the proposed class is easily ascertainable.

32.     Plaintiff seeks to represent a "Class" defined as follows:

**United States residents who have purchased or leased Defendants' vehicles**
including the following Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-
Class electric, MY 2012-2018 C-Class, MY 2012-2017 E-Class, MY 2014-2018 CLA,
MY 2015-2018 GLA, MY 2013-2018 GLK which were subject to the Mercedes-Benz
Electrical Grounding/Premature Airbag Deployment Recall.

33.     Plaintiff also seeks to represent a "Ohio subclass" defined as follows:

**All Ohio residents who purchased or leased Defendants vehicles** including the
following Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-Class electric,
MY 2012-2018 C-Class, MY 2012-2017 E-Class, MY 2014-2018 CLA, MY 2015-
2018 GLA, MY 2013-2018 GLK which were subject to the Mercedes-Benz Electrical
Grounding/Premature Airbag Deployment Recall .

34.     Plaintiff is a member of the Class that she seeks to represent.  Plaintiff is a United States

citizen who purchased and/or leased Defendant's vehicles.

35.     Plaintiff is a member of the Subclass that she seeks to represent.  Plaintiff is a resident

of Ohio who purchased and/or leased Defendant's vehicles.

11

36.     This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

(a) **Numerosity**: The Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, more than 495,000 vehicles are reported to be subject to Defendant's Electrical Grounding/Premature Airbag Deployment Recall.

(b) **Commonality**: Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact include, but are not limited to:

(i) Whether Defendant made false representations regarding the safety, quality and consumer enjoyment of their vehicles;

(ii) If so, whether Defendant knew they were false or were reckless as to their veracity at the time they were made;

(iii) Whether Defendant negligently and/or purposely misrepresented various facts regarding its recall of vehicles and what the true intent of Defendant is regarding satisfying recalls of its dangerous vehicles;

(iv) Whether Defendant breached any implied contractual obligations to purchasers and lessees;

(v) Whether the defects in the vehicles "recalled" by Defendant render them unfit for their intended use;

(vi) Whether Defendant's actions have caused damages, and the extent of such damages, to Plaintiff and members of the Class;

(vii) Whether Defendant should be required to compensate Plaintiff and members of the Class for past, present, and/or future lease payments while the subject vehicles are subject to the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment

Recall;

(viii) Whether Defendant should be required to accept return of its vehicles and make Plaintiff whole, or to furnish replacement and or rental vehicles to Plaintiff and members of the Class during the period for which they are denied the use of their defective vehicles due to the inherent dangers therein;

(ix) Whether Defendant has actually met its requirement to recall its defective goods or whether it even intends to; and

(x) Whether Defendant should be subject to punitive damages.

(c) **Typicality**: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the members of the Class sustained damages arising out of Defendant's wrongful and fraudulent conduct as alleged herein.

(d) **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interest that is adverse to the interests of the other Class Members.

(e) **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the Class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

(f) **Public Policy Considerations**: When a company or individual engages in fraudulent conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a means to achieve vindication of their rights. The members of the Class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court.  There is a well-defined community of interest in the questions of law or fact affecting the Class in that the legal questions of fraud, breach of contract, and other causes of action, are common to the Class Members. The factual questions relating to Defendant's wrongful conduct and its ill-gotten gains are also common to the Class Members.

**FIRST CAUSE OF ACTION**
**FRAUD – INTENTIONAL MISREPRESENTATION**
***(By Plaintiff Individually and On Behalf of All Class Members***
***Against Defendant)***

37.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

38.    As stated above, Defendant made numerous false representations regarding its vehicles.

39.    Defendant misrepresented, among other things, that (1) its vehicles were safe, fun to own, and best in class in quality; (2) that its service would be of the best quality; and (3) that its defective and deadly vehicles would be "recalled" and fixed and subject dangerous products would be serviced in a world class manner according to promises and purposely misleading statements.

40.    The representations made by Defendant proved to be completely false and misleading.

41.    Defendant has, through traditional advertising and through social media outlets, promoted the safety and quality of its vehicles and service of such vehicles. Defendant knew that the

representations in its communications regarding the sale and lease of its vehicles were false; or at the minimum, Defendants made the representation with reckless disregard for the truth.

42.     Based on the representations by Defendant, Plaintiff and the Class purchased and or leased its vehicles.

43.     Plaintiff and Class Members have each expended many thousands of dollars on Defendant's vehicles. Additionally, Plaintiff experienced significant distress as a result of being misled regarding the safety of Defendant's vehicles and the manner of recalling its dangerous and self-described potentially deadly vehicles.

44.     Plaintiff specifically purchased or leased Defendant's vehicles in reliance on Defendant's representations. Furthermore, Plaintiff's distress stems from their experiences in being forced to drive dangerous vehicles and in being misled by Defendant regarding their safety and the ability to have their vehicles repaired and made to be safe.

**SECOND CAUSE OF ACTION**
**FRAUD - NEGLIGENT MISREPRESENTATION**
***(By Plaintiff Individually and On Behalf of All Class Members***
***Against Defendant)***

45.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

46.     Defendant made numerous false representations regarding the safety of its vehicles and the ability and desire to have the cars recalled and fixed.

47.     Defendant represented, among other things, that (1) its vehicles were safe, fun to own, and best in class in quality; (2) that its service would be of the best quality; and (3) that its defective and dangerous vehicles would be "recalled" and fixed and defective products would be serviced in a world class manner.

48.     Representations made by Defendant proved to be false and/or misleading.

49.     Defendant has, through advertising and communications promoted its vehicles vigorously and promised to recall and fix its vehicles. Although Defendant may have honestly believed that these representations were true, based on the lack of any reasonable ability to repair its vehicles and satisfy its recall, Defendant had no reasonable grounds for believing the representations were true when they made it.

50.     Based on the representations by Defendant, Plaintiff and the Class purchased and or leased their vehicles.

51.     Plaintiff and the Class expended thousands of dollars on their vehicles. Defendant made further false promises regarding its ability to recall and fix these dangerous vehicles. Additionally, Plaintiff and the Class experienced significant stress as a result of being left with dangerous vehicles.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
***(By Plaintiff Individually and On Behalf of All Class Members***
***Against Defendant)***

52.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

53.     Mercedes-Benz provided Plaintiff and Class Members with an express warranty that covers, among other things, the defective airbags against defects in factory-supplied materials or workmanship for four years after the warranty start date or 50,000 miles, whichever occurs first, and provides that during this coverage period, authorized Mercedes-Benz dealers will repair, replace, or adjust all parts on the vehicle that are defective in factory-supplied materials or workmanship. This warranty became part of the basis of the bargain. Mercedes-Benz manufactured and sold defective vehicles that are covered by the express warranty.

54.     Mercedes-Benz breached this express warranty each time its dealerships failed to properly repair, replace, or adjust the malfunctioning airbags and thus failed to return the defective vehicles to proper working condition. Prior to and after the issuance of the October 2017 Electrical

16

Grounding/Premature Airbag Deployment Recall, Mercedes-Benz and its dealers continued to permit the malfunctioning defective airbags to remain in Class Members' vehicles despite the obvious dangers of doing so.

55.    Mercedes-Benz has actual knowledge of the specific defects associated with the defective airbags and the resulting problems. The Electrical Grounding/Premature Airbag Deployment Recall confirms that Mercedes-Benz is well aware of the defects and has been given a reasonable time and/or a reasonable opportunity to cure its breach of written warranty. Plaintiff and Class Members contacted their local Mercedes-Benz dealerships and Defendant in an effort to obtain a repair of the defective airbags. To date, Mercedes-Benz has refused to remedy the defective airbags.

56.    As a result of Mercedes-Benz' breach of the express warranty, Plaintiff and Class Members suffered damages in the amount of the difference between the value of the defective vehicles equipped with the defective airbags and the value of the vehicles if they had been equipped as warranted.

57.    Plaintiff and Class Members also suffered diminution in the value of their defective Mercedes-Benz vehicles, out-of-pocket expenditures related to the cost to obtain safe alternate transportation, towing charges incurred due to the inability to safely operate the defective vehicles, the cost of purchasing additional vehicles, and other damages as described herein.

58.    Defendant's defective Mercedes-Benz vehicles are the direct and proximate cause of the injuries suffered by the Plaintiff and Class Members.

59.    Plaintiff and Class Members are entitled to legal and equitable relief against Mercedes-Benz, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### *(By Plaintiff Individually and On Behalf of All Class Members*
### *Against Defendant)*

60.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

61.     Plaintiff entered into an implied contract with Defendant to provide a luxury, quality and safe vehicle in exchange for money. Defendant advertised and marketed its vehicles to Plaintiff and the Class promising a superior quality and experience.  Plaintiff provided payment in consideration for Defendant's promises.

62.     Instead, Defendant breached the contract by refusing to actually recall its defective and dangerous vehicles and to provide best in class service and to provide a fun, stress free and enjoyable vehicle and driving experience, and when such promises were made regarding recall of such dangerous vehicles these promises were broken.

63.     Plaintiff and the Class expended thousands of dollars on these dangerous vehicles and have been damaged by Defendant's wrongful conduct.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### *(By Plaintiff Individually and On Behalf of All Class Members Against Defendant)*

64.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

65.     Plaintiff and the Class purchased and/or leased Defendant's products reasonably expecting a luxury, quality and safe vehicle in exchange for money. Plaintiff and the Class provided payment in consideration for Defendant's promises.

66.     As shown above, Defendant engaged in deceptive behavior which clearly interfered with the rights of Plaintiff and the Class to receive the benefits of their purchases.

67.     Plaintiff and the Class expended thousands of dollars on the dangerous vehicles.

68.     As between Defendant, Plaintiff, and the Class, it is against public policy and common notions of good faith and fair dealing for Plaintiff and the Class to bear the damages that result from Defendant's actions and behavior.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
*(By Plaintiff Individually and On Behalf of All Class Members Against Defendant)*

69.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

70.     At the time Defendant marketed, sold and distributed its vehicles for use by Plaintiff and Class members, Defendant knew of the use for which its vehicles were intended and impliedly warranted its vehicles to be of a certain quality and safety.

71.      Defendant embarked on and carried out a common scheme of marketing and selling its vehicles by falsely and deceptively representing that its vehicles were safe and without defects, and that if vehicles were shown to be unsafe that they would be repaired and fixed.

72.     Said representations and warranties are false, misleading, and inaccurate in that recalled vehicles are unsafe and unreasonably dangerous due to its defects.

73.     Defendant's vehicles, when sold and leased, were defective, dangerous, unfit for ordinary use, and unfit for the use for which they were sold.

74.     Defendant's vehicles contain a defect and danger which renders them useless or renders their use inconvenient and imperfect such that Plaintiff and the Class Members would not have purchased or leased the vehicles if they had known of the defect and dangers.

75.     The damages in question arose from the reasonably anticipated use of the vehicles in question.

76.     Defendant breached the implied warranties or merchantability and fitness for a particular purpose and benefit when the vehicles were sold or leased to Plaintiff and the Class in that they are dangerous and unsafe.

77.     As a direct and proximate cause of Defendant's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and the Class have sustained and will continue to sustain the loss of use of their vehicles, economic losses and consequential damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

## SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
*(By Plaintiff Individually and On Behalf of All Class Members*
*Against Defendant)*

78.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79.     Plaintiff and the Class were expected to drive unreasonably dangerous and defective recalled vehicles that could malfunction "**possibly causing serious injury or death," or result in "inadvertent deployment of the driver airbag ...[and] may cause a risk of injury to the driver and may increase the risk of a crash."** while Defendant unjustly reaped profits.

80.     Defendant unjustly deprived Plaintiff and the Class of a safe and high-quality driving experience, as well as of monies that Plaintiff and the Class continued to pay to drive defective and unreasonably dangerous and defective recalled vehicles provided by Defendant.

81.     Defendant's retention of this ill-gotten revenue is unjust and inequitable because Defendant engaged in wrongful conduct to entice Plaintiff and the Class to purchase and continue to drive the unreasonably dangerous and defective recalled vehicles in question.  Defendant received a benefit for its unreasonably dangerous and defective recalled vehicles that Plaintiff and the Class did not bargain for.

82.     Defendant was aware of the benefit it was receiving as a result of its wrongful conduct and has enjoyed the benefits of its financial gains and at the expense of Plaintiff and Class members. As between Plaintiff, members of the Class and Defendant, it is unjust for innocent consumers who

fulfilled their end of the bargain to pay for the mistakes of Defendant who failed to provide Plaintiff and the Class what they paid for and to fulfill reasonably expected promises.

83.     Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and the Class was inequitable and unjust. Plaintiff and the Class have no adequate remedy at law and are entitled to seek restitution and all other relief as deemed just and equitable, including but not limited to, an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by virtue of its wrongful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on her own behalf, and on behalf of the Class Members and Sub-Class Members, as well as the general public, prays for judgment as follows:

### **CLASS CERTIFICATION**:

1.   For an order certifying the proposed Class;

2.   That Plaintiff be appointed as the representative of the Class; and

3.   That counsel for Plaintiff be appointed as Class Counsel.

### **AS TO ALL CAUSES OF ACTION**:

1.   For all actual, consequential, and incidental losses and damages, according to proof;

2.   For punitive damages, where permitted by law;

3.   For attorneys' fees, where permitted by law;

4.   For costs and suit herein incurred; and

5.   For such other and further relief as the Court may deem just and proper.

Dated: June 4, 2018

**CLIMACO, WILCOX, PECA
& GAROFOLI, C.O., L.P.A.**

By:  */s/ John R. Climaco*
John R. Climaco (0011456)
jrclim@climacolaw.com
Scott D. Simpkins (0066775)

sdsimp@climacolaw.com
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632

**LEIST WARNER, LLC**

By: /s/ Patrick G. Warner
Patrick G. Warner (0064604)
pwarner@leistwarner.com
LEIST WARNER, LLC
513 East Rich Street, Suite 201
Columbus, Ohio 43215
Telephone: (614) 222-1000
Facsimile:  (614) 222-0890

**GERAGOS & GERAGOS, APC**

By:  /s/ Mark J. Geragos
Mark J. Geragos
geragos@geragos.com
(*to be admitted pro hac vice*)
Ben J. Meiselas
meiselas@geragos.com
(*to be admitted pro hac vice*)
Jeffrey Kwatinetz
jeff@geragos.com
(*to be admitted pro hac vice*)
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile:  (213) 232-3255

Lori G. Feldman
lori@geragos.com
*(to be admitted pro hac vice)*
7 West 24th Street
New York, New York 10010
Telephone: (213) 625-3900
Facsimile:  (213) 232-3255

*Counsel for Plaintiff Ann Sayler, individually and as the representative of a class of similarly-situated persons*

22

**DEMAND FOR JURY TRIAL**

Plaintiff Ann Sayler, individually and as the representative of a class of similarly-situated persons, hereby demands a jury trial.

**CLIMACO, WILCOX, PECA**
**& GAROFOLI, C.O., L.P.A.**

By:  */s/ John R. Climaco*
John R. Climaco (0011456)
jrclim@climacolaw.com
Scott D. Simpkins (0066775)
sdsimp@climacolaw.com

**LEIST WARNER, LLC**

By:  */s/ Patrick G. Warner*
Patrick G. Warner (0064604)
pwarner@leistwarner.com
LEIST WARNER, LLC

**GERAGOS & GERAGOS, APC**

By:  */s/ Mark J. Geragos*
Mark J. Geragos
geragos@geragos.com
(*to be admitted pro hac vice*)
Ben J. Meiselas
meiselas@geragos.com
(*to be admitted pro hac vice*)
Jeffrey Kwatinetz
jeff@geragos.com
Lori G. Feldman
lori@geragos.com
(*to be admitted pro hac vice*)


*Counsel for Plaintiff Ann Sayler, individually and as the representative of a class of similarly-situated persons*